# 25-2837

## United States Court of Appeals

*for the*

## Second Circuit

Estate of TAMAR KEDEM SIMAN TOV, By Heir-at-Law GAD KEDEM, Estate of O.S.T, By Heir-at-Law GAD KADEM, TALIA BINER, ESTHER BINER, GAD KEDEM, Individually, REUMA KEDEM, GIDEON HEIMAN GLATT, ODIN ELIAZ, Individually, YASMIN BEN GIGI, YIFAT TANAMI, MAAYAN ELIAZ, Individually, DAFNA SHAY HEIMAN, DOV ELIAZ, STAV ARAVA ELIAZ, Individually, DITZA HEIMAN, SAGI ARAVA, Estate of T.E., Minor Child, By Heir-at-Law MAAYAN ELIAZ, NETA HEIMAN MINA, Estate of DIKLA ARAVA ELIAZ, by Heir-at-Law ODIN ELIAZ AND STAV ELIAZ, YALI KOPERSTEIN, ZIV KOPERSTEIN, ALON ARAVA, HADAR BEN DAVID, NAAMA KOPERSTEIN, LIAT KOPERSTEIN, RAN AHARON AVNI, GONI KOPERSTEIN AVNI, SIGAL BENBENISTE, MERAV TAL (TAL ALFASI), SIGALIT SHARABI, RACHEL ALFENDRI, MAAYAN ZIN,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF *AMICI CURIAE* FORMER NATIONAL SECURITY AND FOREIGN POLICY OFFICIALS IN SUPPORT OF APPELLANTS

SUSAN GREENE
HOLTZMAN VOGEL BARAN TORCHINSKY
  & JOSEFIAK PLLC
5360 Genesee Street, Suite 203
Buffalo, New York 14026
(716) 647-6103

JASON B. TORCHINSKY
ELIZABETH PRICE FOLEY
HOLTZMAN VOGEL BARAN TORCHINSKY
  & JOSEFIAK PLLC
2300 N Street N.W., Suite 643
Washington DC 20037
(202) 737-8808

*Attorneys for Amici Curiae*

 COUNSEL PRESS   (800) 4-APPEAL • (389965)

Individually, D. E., Minor Child, By Legal Guardian MAAYAN ZIN, SOFIA HODEDATOV, TOMER TAL ALFASI, E. E., Minor Child, By Legal Guardian MAAYAN ZIN, GALINA RAHMILOV, Individually, VIKTOR RAHMILOV, KEREN BLANK, ORI TAL ALFASI, HANANEL BENBENISTE, Estate of MOSHE SHUVA, By Heir-at-Law YOSSEF SHUVA, EFIM SOLOMONOV, NATALI RAHMILOV, E. L. R., Minor Child, By Legal Guardian GALINA RAHMILOV, MAAYAN DEVIKO, SONIA SHUVA, YOSSEF SHUVA, Individually, SHIMON SHUVA, MORAN KAPLUN (TARASOV), Individually, ORIT BAR-ON, Individually, Estate of DROR KAPLUN, By Heirs-at-Law NOAM KAPLUN, MAAYAN KAPLUN KEIDER, MORAN KAPLIN (TARASOV), Estate of MARCEL FRAILICH, By Heirs-at-Law MOR FRIDA STRIKOVSKI, ZIV FRAILICH, AMIT FRAILICH, MAAYAN KAPLUN KEIDAR, Individually, NOAM KAPLUN, Individually, TAMIR HODEDATOV, Estate of YUVAL BAR-ON, By Heirs-at-Law ORIT BAR-ON AND ITZHAK BAR-ON, ITZHAK BAR-ON, Individually, SHARON CASPI, Estate of VARDA HARAMATY, By Heir-at-Law AYELET HARAMATI MIZRAHI, AMIT CASPI, Individually, MOR FRIDA STRIKOVSKI, Individually, ZIV FRAILICH, Individually, GAT VAGE, ITAMAR MIZRAHI, AVRAHAM MIZRAHI, AYELET HARAMATI MIZRAHI, Individually, TOMER MIZRAHI, MAY CASPI, DOR MICHAEL SABAG, EDITH HYAMS, DANNY OFER VAGE, Individually, MICHAL SABAG, H. V., Minor Child, By Legal Guardian DANNY OFER VAGE, ASHER SABAG, AMIT FRAILICH, Individually, NIV CASPI, S. C., Minor Child, By Legal Guardian AMIT CASPI, IGOR SHINDEL, Estate of GAYA HALIFA, By Heir-at-Law AVRAHAM HALIFA, GUY SHINDEL, S. V., Minor Child, By Legal Guardian DANNY OFER VAGE, Estate of MARK SHINDEL, By Heir-at-Law JULIA SHINDEL, NOGA HALIFA, SIGAL HALIFA, AVRAHAM HALIFA, Individually, IDO HALIFA, Estate of YUVAL SALOMON, By Heir-at-Law DORON SALOMON, NITZAN LAHAV-PASTER, IRIT LAHAV, YAARA SZATMARI, ELIYAHU HANAN BUCH, TAMAR LAHAV, JULIA SHINDEL, Individually, B. S., Minor Child, By Legal Guardian JULIA SHINDEL, DORON SALOMON, Individually, R. L., Minor Child, By Legal Guardian GALIT LAHAV, OMER LAHAV, ILAN LAHAV, GALIT LAHAV, Individually, GUI LAHAV,

*Plaintiff-Appellants,*

STANDWITHUS, RAUL WALLENBERG CENTRE FOR HUMAN RIGHTS, TEMPLE BETH EL, EMET THE ENDOWMENT FOR MIDDLE EAST TRUTH, NATIONAL JEWISH ADVOCACY CENTER, INC.,

*Plaintiffs,*

— v. —

UNITED NATIONS RELIEF AND WORKS AGENCY (UNRWA), PHILLIPE LAZZARINI, PIERRE KRAHENBUHL, FILIPPO GRANDI, LENI STENSETH, SANDRA MITCHELL, GRETA GUNNARSDOTTIR, MARGOT ELLIS,

*Defendants-Appellees.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

INTEREST OF *AMICI CURIAE* ...............................................................1

ARGUMENT ........................................................................................4

    I.    SEPARATION OF POWERS REQUIRES DEFERENCE TO THE EXECUTIVE..............................................................................4

          A.    The Executive's Position on Matters of Diplomacy and National Security Must be Respected by the Court ...................4

          B.    Courts May Not Second-Guess the Considered, Unanimous Judgment of the Political Branches on Matters of Foreign Policy and National Security .......................7

          C.    The Current Executive is Entitled to Deference Despite Its Change in Position .................................................................10

    II.    THE CPIUN DOES NOT EXTEND IMMUNITY TO UNRWA ........................................................................................13

          A.    The Plain Language of the CPIUN Extends Immunity Only to "the United Nations" .................................................13

          B.    The CPIUN's Ratification History Evinces No Evidence that the Executive or Senate Believed It Extended Immunity Beyond the UN Itself ..............................18

          C.    The District Court Committed Egregious Legal Error In Its Construction of the CPIUN .............................................24

CONCLUSION ....................................................................................29

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abbott v. Abbott,*
  560 U.S. 1 (2010)................................................................10, 17

*Am. Ins. Ass'n v. Garamendi,*
  539 U.S. 396 (2003)....................................................................4

*Auer v. Robbins,*
  519 U.S. 452 (1997)...................................................................13

*Bisson v. U.N,*
  No. 06 Civ. 6352, 2008 WL 375094 (S.D.N.Y. Feb. 11, 2008).........................25

*Boimah v. U.N. General Assembly,*
  664 F. Supp. 69 (E.D.N.Y. 1987).............................................27, 28

*Boumediene v. Bush,*
  553 U.S. 723 (2008)......................................................................7

*Chan v. Korean Air Lines, Ltd.,*
  490 U.S. 122 (1989)...................................................................17

*Chi. & S. Air Lines v. Waterman S.S. Corp.,*
  333 U.S. 103 (1948).....................................................................5

*Dames & Moore v. Regan,*
  453 U.S. 686 (1981)......................................................................9

*Dep't of Navy v. Egan,*
  484 U.S. 518 (1988).....................................................................5

*Estate of Tov by Kedem v. UNRWA,*
  No. 24 Civ. 4765 (AT), 2025 WL 2793701 (S.D.N.Y. Sept. 30, 2025).......*passim*

*Fuld v. Palestine Liberation Org.,*
  606 U.S. 1 (2025)......................................................................6, 9

*Georges v. United Nations,*
  834 F.3d 88 (2d Cir. 2016)..................................................16, 17, 26

*Georges v. United Nations,*
  84 F. Supp. 3d 246 (S.D.N.Y. 2015) ...........................................25, 26

*Holder v. Humanitarian Law Proj.*,
561 U.S. 1 (2010)........................................................6, 7, 12

*Hunter v. U.N.*,
800 N.Y.S.2d 347 (N.Y. Sup. Ct. 2004).........................................27, 28

*Immigr. & Naturalization Serv. v. Cardoza-Fonseca*,
480 U.S. 421 (1987).........................................................18

*In re New Times Secs. Servs., Inc.*,
371 F.3d 68 (2d Cir. 2004).....................................................12

*Jam v. Int'l Fin. Corp.*,
586 U.S. 199 (2019)..........................................................21

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018)...........................................................9

*Kiobel v. Royal Dutch Petroleum Co.*,
621 F.3d 131 (2d Cir. 2010)...................................................19

*Kolovrat v. Oregon*,
366 U.S. 187 (1961)......................................................11, 13

*Laventure v. U.N.*,
279 F. Supp. 3d 94 (E.D.N.Y. 2017).............................................26

*Lempert v. Rice*,
956 F. Supp. 2d 24 (D.D.C. 2013).............................................25

*Maximov v. United States*,
373 U.S. 54 (1963)...........................................................17

*Me. Cmty. Health Options v. United States*,
590 U.S. 214 (2020)..........................................................17

*Medellín v. Texas*,
552 U.S. 491 (2008).......................................................9, 17

*Mora v. New York*,
524 F.3d 183 (2d Cir. 2008)..................................................14

*Moya v. United States Dep't of Homeland Sec.*,
975 F.3d 120 (2d Cir. 2020)..................................................17

*N.Y. State Nurses Ass'n Benefits Fund v. Nyack Hosp.*,
46 F.4th 97 (2d Cir. 2022)...................................................14

iii

*Nicol v. U.N. Missions in Liberia,*
   No. 09-1800, 2009 WL 2370179 (E.D. Pa. July 30, 2009) ................................25

*Nielsen v. Preap,*
   586 U.S. 392 (2019)................................................................................... 13-14

*Niz-Chavez v. Garland,*
   593 U.S. 155 (2021).........................................................................................14

*Noel Canning v. NLRB,*
   705 F.3d 490 (D.C. Cir. 2013) ........................................................................14

*Sadikoglu v. U.N. Development Programme,*
   No. 11 Civ. 0294, 2011 WL 4953994 (S.D.N.Y. Oct. 14, 2011) ......24, 25, 26, 28

*Sarei v. Rio Tinto, PLC,*
   487 F.3d 1193 (9th Cir. 2007)..........................................................................11

*Shamsee v. Shamsee,*
   428 N.Y.S.2d 33 (N.Y. App. Div. 1980) .....................................................26, 27

*Sumitomo Shoji Am., Inc. v. Avagliano,*
   457 U.S. 185 (1982).......................................................................10, 11, 13, 17

*The Amiable Isabella,*
   19 U.S. (6 Wheat) 1 (1821).........................................................................17, 18

*Trump v. Hawaii,*
   585 U.S. 667 (2018)...........................................................................................4

*United States v. Alvarez-Machain,*
   504 U.S. 655 (1992)..................................................................................... 15-16

*United States v. Curtiss-Wright Export Corp.,*
   299 U.S. 320 (1936)...........................................................................................4

*United States v. Nixon,*
   418 U.S. 683 (1974)........................................................................................4, 6

*United States v. Requena,*
   980 F.3d 30 (2d Cir. 2020) ..............................................................................14

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952).......................................................................................4, 9

*Ziglar v. Abassi,*
   582 U.S. 120 (2017)...........................................................................................4

iv

*Zivotofsky v. Kerry*,
576 U.S. 1 (2015)....................................................................................9

**Statutes:**

28 U.S.C. § 288 ....................................................................................21

Further Consol. Approps. Act, div. G, tit. III, § 301, Pub. L. 118-47,
138 Stat. 460 (2024)............................................................................8

**Other Authorities:**

116 Cong. Rec. 7878 (1970) .................................................................22

Adam Kredo, *'Everything Is On the Table': Trump Admin Weighs Terror
Sanctions for UNRWA*, WASH. FREE BEACON (Dec, 11, 2025),
https://tinyurl.com/mr3rjds6 ..............................................................8

Ann. Rep. of the Dir. of UNRWA 1951-52,
U.N. Doc. A/2171, Supp. No. 13 (1952) ...........................................20

Ann. Rep. of the Dir. of UNRWA 1953-54,
U.N. Doc. A/2717, Supp. No. 17 (1954) ...........................................20

Ann. Rep. of the Dir. of UNRWA 1955-56,
U.N. Doc. A/3212, Annex G (1956) ..................................................20

Ann. Rep. of the Dir. of UNRWA 1956-67,
U.N. Doc. A/3686, Supp. No. 14, at Annex H (1957)........................20

Convention on Privileges & Immunities of the Specialized Agencies,
Aug. 16, 1949, 33 U.N.T.S. 261 ........................................................23

Convention on the Privileges & Immunities of the U.N., Feb. 13, 1946,
21 U.S.T. 1418 ...........................................................................13, 16

Exec. Order No. 14199, 90 Fed. Reg. 9275 (Feb. 4, 2025) .................5, 6

*Fiscal Year 2025 USAID Budget Request: Hearing Before the S. Comm.
on Foreign Rels.*, 118 Cong. (2024)................................................ 8-9

G.A. Res. 212 (III) (Nov. 19, 1948)......................................................19

G.A. Res. 302 (IV) (Dec. 8, 1949)..................................................18, 19

v

Letter from Damian Williams, U.S. Att'y, S.D.N.Y., to Analisa Torres, Judge, S.D.N.Y. (July 30, 2024), *Estate of Tov*, No. 24 Civ. 4765, ECF No. 17 ...................................................................................................12

Letter from George C. Marshall, Sec'y, U.S. Dep't of State, to Joseph W. Martin, Jr., Speaker, U.S. House (May 12, 1947), https://tinyurl.com/mr2ztb6a .......................................................................21

Letter from Jay Clayton, U.S. Att'y for the S.D.N.Y., to Analisa Torres, Judge, S.D.N.Y. (Apr. 24, 2025), *Estate of Tov*, No. 24 Civ. 4765 (AT), ECF No. 59 .......................................................................................12

Letter from Rep. Josh Gottheimer, et al., to Janet Yellen, Sec'y, Dep't of Treasury and Antony Blinken, Sec'y Dep't of State (May 16, 2024), https://tinyurl.com/p7d8hrz4 ................................................................ 7-8

Letter from Sen. Pete Ricketts, et al., to Marco Rubio, Sec'y, Dep't of State (Nov. 13, 2025), https://tinyurl.com/azabfwk8............................................8

Memorandum, Acting Assistant Chief of the Div. of Int'l Org. Affairs (Halderman) (Apr. 9, 1946), https://tinyurl.com/5x3cvv38 ...........................21

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2005).......................14

PHILIPPE SANDS & PIERRE KLEIN, BOWETT'S LAW OF INT'L ORGS. (6th ed. 2009)......................................................20

Pl.'s Mem. of Law in Opp'n, *Georges v. U.N.*, 84 F. Supp. 3d 246 (S.D.N.Y. 2015) (No. 1:13-cv-07146), ECF No. 35......................................26

Pl.'s Mem. Regarding Lack of Immunity, *Sadikoglu v. U.N. Dev. Programme*, No. 11 Civ. 0294 (S.D.N.Y. Oct. 14, 2011), ECF No. 15........25, 28

Pl.'s Mem. to Respond, *Lempert v. Rice*, 956 F. Supp. 2d 17 (D.D.C. 2013) (No. 12-01518), ECF No. 29 ...............................................................25

Press Release, Sen. Mitch McConnell, McConnell: We Will Not Fund UNRWA (July 25, 2024), https://tinyurl.com/38xcemfc ...................................8

Press Release, U.S. Dep't of Treasury, Treasury Exposes and Disrupts Hamas's Covert Support Network (Jan. 21, 2026), https://home.treasury.gov/news/press-releases/sb0368 ................................8

Rhoda Margesson & Jim Zanotti, CONG. RSCH. SERV., IF12863, UNWRA: BACKGROUND & U.S. FUNDING TRENDS (2025) ..........................................5

S. Comm. on Foreign Rels., Convention on Privileges & Immunities of the
U.N., Exec. Rep. 91-17 (Mar. 17, 1970) ................................................22

U.N. Charter ...........................................................................................14, 15

U.S. DEP'T OF STATE, REP. TO CONGRESS ON UNRWA VETTING FOR
IMPARTIALITY (2025), https://tinyurl.com/2kyzkd3e .............................6

U.S. GOV'T ACCOUNTABILITY OFF., GAO-26-107708, WEST BANK &
GAZA: STATE'S REPORTING ON UN EFFORTS TO ADDRESS PROBLEMATIC
TEXTBOOK CONTENT HAD GAPS BEFORE FUNDING ENDED (2026) ......................5

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are three former U.S. Attorneys General, international law scholars, and former high-level U.S. government officials who had significant responsibility for national security, foreign policy, and diplomacy issues. They have a deep understanding of the immunity of the United Nations, international organizations, and foreign officials and a professional interest in ensuring that those responsible for supporting terrorist groups are held accountable under the law.

*Amici* are the following:

**Michael B. Mukasey**, a former U.S. Attorney General and judge on the U.S. District Court for the Southern District of New York.

**Edwin Meese, III**, a former U.S. Attorney General and Counselor to the President.

**William Barr**, a former two-time U.S. Attorney General, Deputy Attorney General, Assistant Attorney General for the Office of Legal Counsel, and CIA officer. He presently practices law with Torridon Law, PLLC.

**Gen. Keith Alexander (ret.)**, a retired four-star general of the U.S. Army, Director of the National Security Agency, Chief of the Central Security Service,

---

[1] No counsel for any party authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparation or submission of this brief; and no person, other than *amici curiae*, its members, or its counsel contributed money intended to fund preparation or submission of this brief.

1

Commander of the U.S. Cyber Command ("CYBERCOM") and Deputy Chief of Staff for G-2 Intelligence within the U.S. Army.

**Elliott Abrams**, a former U.S. Special Representative for Iran, U.S. Special Representative for Venezuela, Deputy National Security Advisor, Assistant Secretary of State for Inter-American Affairs, Assistant Secretary of State for Human Rights and Humanitarian Affairs, and Assistant Secretary of State for International Organization Affairs. He is presently a Senior Fellow for Middle Eastern Studies at the Council of Foreign Relations.

**Victoria Coates,** a former national security official who served as Deputy Assistant to the President and Deputy National Security Advisor for the Middle East and North Africa from 2019 to 2020. Before that role, she worked on the National Security Council staff in a variety of capacities from 2017 to 2020.

**Bonnie Glick**, a former Deputy Administrator for the U.S. Agency for International Development ("USAID") and former Foreign Service Officer at the U.S. Department of State. She currently serves as a Senior Fellow at the Foundation for Defense of Democracies.

**Mitchell A. Silk,** an international lawyer, served as the Assistant Secretary for International Markets at the Department of the Treasury and has served since 2006 as Chairman/Chairman Emeritus of Agudath Israel of America Pro Bono Legal Services, a nationwide network of over 400 civil rights lawyers.

2

**Prof. Steven G. Calabresi,** the Clayton J. and Henry R. Barber Professor of Law at Northwestern University Pritzker School of Law. He previously served as a Special Assistant for Attorney General Edwin Meese, III, and served in the White House for two Administrations.

**Hillel Neuer,** an international lawyer who serves as Executive Director of United Nations Watch, a Geneva-based human rights NGO, and the founding chair of the Geneva Summit for Human Rights and Democracy. He was formerly Vice President of the NGO Special Committee on Human Rights in Geneva.

**Mark Goldfeder**, the CEO of the National Jewish Advocacy Center (NJAC) and a law professor at Touro Law School. Previously, he served as the founding Editor of the Cambridge University Press Series on Law and Judaism, a Trustee of the Center for Israel Education, and a member of the United States Holocaust Memorial Council.

**Prof. Eugene Kontorovich**, a Professor of Law at George Mason University, Antonin Scalia Law School and Executive Director of its Center for the Middle East and International Law. He is also a Senior Research Fellow in The Heritage Foundation's Margaret Thatcher Center for Freedom.

**Jeremy Rabkin** is a Professor Emeritus of Law at George Mason University, Antonin Scalia Law School, where he taught international law. He previously served

on the Board of Directors of the Center for Individual Rights, a public interest law firm, as well as the U.S. Institute of Peace.

## ARGUMENT

## I. SEPARATION OF POWERS REQUIRES DEFERENCE TO THE EXECUTIVE

### A. The Executive's Position on Matters of Diplomacy and National Security Must be Respected by the Court

"Judicial inquiry into the national-security realm raises concerns for the separation of powers in trenching upon matters committed to the other branches." *Ziglar v. Abassi*, 582 U.S. 120, 142 (2017) (internal quotations omitted); *accord Trump v. Hawaii*, 585 U.S. 667, 704 (2018). The President is constitutionally assigned a "vast share of responsibility for the conduct of our foreign relations." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610-11 (1952) (Frankfurter, J., concurring)). "[H]e, not Congress, has the better opportunity of knowing the conditions which prevail in foreign countries. . . . He has his confidential sources of information[,]" as well as "diplomatic, consular, and other officials" who convey information that is often classified as secret. *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936).

For national security matters, therefore, "the courts have traditionally shown the utmost deference" to the President. *United States v. Nixon*, 418 U.S. 683, 710

4

(1974). Indeed, it "would be intolerable that courts, without the relevant information, should review and perhaps nullify actions of the Executive taken on information properly held secret." *Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948). For this reason, "courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs" unless "Congress specifically has provided otherwise." *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988).

Here, the last three presidential administrations have suspended UNRWA funding based on concerns about its terrorist ties. The first Trump Administration did so in August 2018. U.S. GOV'T ACCOUNTABILITY OFF., GAO-26-107708, WEST BANK & GAZA: STATE'S REPORTING ON UN EFFORTS TO ADDRESS PROBLEMATIC TEXTBOOK CONTENT HAD GAPS BEFORE FUNDING ENDED 11 (2026). The Biden Administration suspended it again on January 26, 2024, based on UNRWA employees' participation in the October 7 massacre. Rhoda Margesson & Jim Zanotti, CONG. RSCH. SERV., IF12863, UNWRA: BACKGROUND & U.S. FUNDING TRENDS 2 (2025). In February 2025, the President issued an Executive Order suspending UNRWA's funding indefinitely. Exec. Order No. 14199, 90 Fed. Reg. 9275 (Feb. 4, 2025). In doing so, the President determined that UNRWA "act[s] contrary to the interests of the United States while attacking our allies and propagating anti-Semitism." *Id*. He further found that UNRWA has "been infiltrated

5

by members of groups long designated . . . as foreign terrorist organizations, and UNRWA employees were involved in the October 7, 2023, Hamas attack on Israel." *Id.* A June 2025 State Department report to Congress stated, moreover, that "the Department is actively working to cease U.S. participation in all working-level UNRWA bodies at the UN." U.S. DEP'T OF STATE, REP. TO CONGRESS ON UNRWA VETTING FOR IMPARTIALITY 2 (2025), https://tinyurl.com/2kyzkd3e. The Department is now "maintaining a policy of minimal contact with UNRWA" and "seek[ing] its full dismantlement" because it "has determined UNRWA is irredeemably compromised[.]" *Id.*

The Executive's judgment about UNRWA must be given significant weight. As the Supreme Court recently reiterated, "Combating terrorism is . . . 'an urgent objective of the highest order.'" *Fuld* v. *Palestine Liberation Org.*, 606 U.S. 1, 20 (2025) (quoting *Holder v. Humanitarian Law Proj.*, 561 U.S. 1, 28 (2010)). There is a "strong [national] interest in permitting American victims of international terror to pursue justice in domestic courts." *Id.* When three consecutive Presidents, of different political parties, suspend UNRWA funding because of terrorism concerns, the courts should give the "utmost deference" to their considered judgment, *Nixon*, 418 U.S. at 710, which is borne of expertise that courts do not possess. National security matters involve "efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to

6

assess." *Holder*, 561 U.S. at 34. And "[u]nlike the President and some designated Members of Congress," federal judges do not "begin the day with briefings that may describe new and serious threats to our Nation and its people." *Boumediene v. Bush*, 553 U.S. 723, 797 (2008).

Because national security lies within the ken of the Executive, not the judiciary, it would be absurd for courts to *affirmatively undercut* the Executive's judgment that UNRWA poses a national security threat. Extending absolute immunity to UNRWA would do just that, affording it complete insulation from all domestic law, including terrorism-related lawsuits such as the case at bar. Judicial second-guessing of the national security threat and diplomatic concerns posed by UNRWA would be unprecedented. It would also, as elaborated *infra* Section II, contradict the plain language and ratification history of the Convention on the Privileges & Immunities of the United Nations ("CPIUN"), which clearly does not support such a capacious construction.

**B.    Courts May Not Second-Guess the Considered, Unanimous Judgment of the Political Branches on Matters of Foreign Policy and National Security**

It is not just the Executive branch, however, that has expressed deep concerns about UNRWA's terrorist ties. In the last two years, Members of Congress from both sides of the aisle have condemned UNRWA's material support of Hamas and urged the Executive to designate it as a terrorist organization. Letter from Rep. Josh

Gottheimer, et al., to Janet Yellen, Sec'y, Dep't of Treasury and Antony Blinken, Sec'y Dept of State (May 16, 2024), https://tinyurl.com/p7d8hrz4; Letter from Sen. Pete Ricketts, et al., to Marco Rubio, Sec'y, Dep't of State (Nov. 13, 2025), https://tinyurl.com/azabfwk8. In response, the Executive is presently considering designating UNRWA as a terrorist organization.[2] Adam Kredo, 'Everything Is On the Table': Trump Admin Weighs Terror Sanctions for UNRWA, WASH. FREE BEACON (Dec, 11, 2025), https://tinyurl.com/mr3rjds6.

More importantly, Congress recently expressed the same concerns, pausing UNRWA funding until March 25, 2025. Further Consol. Approps. Act, div. G, tit. III, § 301, Pub. L. 118-47, 138 Stat. 460, 858 (2024).[3] As the then-Senate Republican Leader stated, UNRWA funding was suspended because it is a "discredited and corrupt agency" and Congress wanted to "protect[] American taxpayers from underwriting terrorist savagery[.]" Press Release, Sen. Mitch McConnell, McConnell: We Will Not Fund UNRWA (July 25, 2024), https://tinyurl.com/38xcemfc. "[I]t is clear UNRWA is a morally bankrupt institution beyond the point of redemption . . . . That is why Congress has prohibited funding for UNRWA in 2025 by law." Fiscal Year 2025 USAID Budget Request: Hearing

---

[2] The Treasury Department recently designated Gaza-based organizations that "claim to provide medical care to Palestinian civilians but in fact support the military wing of Hamas . . . ." Press Release, U.S. Dep't of Treasury, Treasury Exposes and Disrupts Hamas's Covert Support Network (Jan. 21, 2026), https://home.treasury.gov/news/press-releases/sb0368.

[3] The February 2025 Executive Order made further congressional action unnecessary for the moment, and funding for UNRWA is again suspended.

*Before the S. Comm. on Foreign Rels.*, 118 Cong. 3-4 (2024) (statement of Sen. Risch).

Congress's decision to suspend UNRWA funding reflects its *agreement with the Executive* that UNRWA's terrorism ties are of serious concern. When the political branches agree on such matters, judicial deference is especially warranted. *See Zivotofsky v. Kerry*, 576 U.S. 1, 20-21 (2015); *Dames & Moore v. Regan*, 453 U.S. 654, 680, 686 (1981). Granting UNRWA absolute immunity from U.S. law would give it *carte blanche* to continue supporting terrorism, which is precisely what the Executive and Congress are trying to stop. That is why, "when the Executive and Congress have spoken with one voice in that sphere [foreign affairs], their coordinate action is 'supported by the *strongest of presumptions* . . . and the burden of persuasion would rest heavily upon any who might attack it.'" *Fuld*, 606 U.S. at 19 (emphasis added) (quoting *Youngstown Sheet & Tube Co.,* 343 U.S. at 637 (Jackson, J., concurring)). This is equally true in the context of treaty interpretation. *Medellín v. Texas*, 552 U.S. 491, 524 (2008). The political branches' "delicate judgments" on matters of foreign affairs are not to be "cavalierly interfere[d]" with by courts. *Fuld*, 606 U.S. at 19 (quoting *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 273 (2018) (plurality opinion)).

Courts must be cognizant of their limited role in light of the political branches' shared concerns. Moreover, as elaborated *infra* Sections II.A-B, the

CPIUN's plain text and ratification history evince a common understanding, held by both political branches, that the CPIUN extended immunity only to the UN *qua* UN. Given this history and the current concerns of Congress and Executive regarding UNRWA's ties to terrorism, this Court should not grant UNRWA absolute immunity from U.S. law.

## C.  The Current Executive is Entitled to Deference Despite Its Change in Position

UNRWA makes much ado about the Executive's differing Statements of Interest filed in the district court. Because of this, UNRWA claims the Executive's position is owed no deference. This argument lacks legal support.

The district court was correct that it need not assign "controlling weight" to the government's position. *Estate of Tov by Kedem v. UNRWA*, No. 24 Civ. 4765 (AT), 2025 WL 2793701, at *7 (S.D.N.Y. Sept. 30, 2025). But it *was* required to give it *great* weight. "It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to *great weight*.'" *Abbott v. Abbott*, 560 U.S. 1, 15 (2010) (emphasis added) (quoting *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185 (1982)). That the Executive's position has changed is of no legal consequence, as evidenced by *Sumitomo*. There, the lower court disregarded the Executive's most recent position on a treaty in favor of an earlier one. *Sumitomo*, 457 U.S. at 184 n.10. Neither position was "indicative of the state of mind of the [1953] Treaty negotiators," reasoned the Court, so whatever "the State Department position may

10

have been previously, it is certainly beyond dispute that the Department *now interprets* the Treaty in conformity with its plain language. . . . That interpretation . . . is entitled to great weight." *Id*. The same is true here. The current Administration, which is charged with the CPIUN's enforcement, is entitled to great weight, particularly because its interpretation conforms to the CPIUN's plain meaning and ratification history. *Kolovrat v. Oregon*, 366 U.S. 187, 194-96 (1961); *Sumitomo*, 457 U.S. at 184-85.

The Executive's altered position does not reduce the weight to which it is entitled. If anything, it shows that the Executive is paying close attention to UNRWA, responding to real-time information about the threats it poses to U.S. interests and security. "[F]oreign relations is a notoriously fluid matter, subject to subtle changes in personnel, events, and perceptions on either side . . . . [It] requires constant monitoring and adjustment." *Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1244 (9th Cir. 2007) (Bybee, J., dissenting), *rev'd in part on other grounds*, 550 F.3d 822 (9th Cir. 2008) (en banc). Administrations not only often have different perspectives, but the evolving nature of world events, particularly national security threats, constantly fuels reevaluation.

The Executive's *current* position on national security matters is given deference precisely because judges are not in a good position to evaluate (much less second-guess) such evolving facts, often classified, upon which the Executive relies.

11

*Holder*, 561 U.S. at 33-34. This is why it is the "*evaluation of the facts* by the Executive . . . [that] is entitled to deference." *Id.* at 33 (emphasis added). Those facts are fluid.

Moreover, the present Administration's statement contains over nine pages explicating why the CPIUN does not extend immunity to UNRWA. Letter from Jay Clayton, U.S. Att'y for the S.D.N.Y., to Analisa Torres, Judge, S.D.N.Y. (Apr. 24, 2025), *Estate of Tov*, No. 24 Civ. 4765 (AT), ECF No. 59. By contrast, the previous Administration's statement contained only *two paragraphs* addressing UNRWA's immunity, uncritically relying on lower court decisions (examined extensively *infra* Section II.C), in which the parties *did not even contest* CPIUN immunity for the different UN entities involved, none of which were UNRWA. Letter from Damian Williams, U.S. Att'y, S.D.N.Y., to Analisa Torres, Judge, S.D.N.Y., at 4 (July 30, 2024), *Estate of Tov*, No. 24 Civ. 4765, ECF No. 17. A previous position, based on an, uncritical reliance on these decisions does not even warrant persuasive force, much less override the Executive's present national security judgment about UNRWA.

The present Administration's position, moreover, is based on the text of the UN Charter and the CPIUN, amplifying its persuasive force. *See In re New Times Secs. Servs., Inc.*, 371 F.3d 68, 81-87 (2d Cir. 2004) (SEC's construction of statute is entitled to deference, despite history of inconsistent interpretation, due to its

12

persuasive force). It is not a "*post hoc* rationalization" that seeks to "defend past agency action against attack." *Auer v. Robbins*, 519 U.S. 452, 462 (1997). There is "simply no reason to suspect that [its] interpretation [of the CPIUN] does not reflect [its] fair and considered judgment on the matter in question." *Id.*

It is, in short, the Executive's prerogative to change its mind about national security threats. Its construction of the CPIUN is consistent with the CPIUN's plain text and ratification history. Its present position, therefore, is not merely persuasive but entitled to "great weight" in the Court's construction of the CPIUN. *Kolovrat*, 366 U.S. at 194-96; *Sumitomo*, 457 U.S. at 180-85.

## II. THE CPIUN DOES NOT EXTEND IMMUNITY TO UNRWA

### A. The Plain Language of the CPIUN Extends Immunity Only to "the United Nations"

Article II, section 2 of the CPIUN provides:

> *The United Nations*, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity.

CPIUN, art. II, § 2, 21 U.S.T. 1418, 1422 (emphasis added).

The CPIUN's grant of immunity to "The United Nations" is not ambiguous, and its plain meaning must be given effect. "Here, grammar and usage establish that 'the' is a 'function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context." *Nielsen v. Preap*, 586 U.S. 392,

13

408 (2019) (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1294 (11th ed. 2005)); *accord Niz-Chavez v. Garland*, 593 U.S. 155, 165-67 (2021). "The" is a definite article that "suggests specificity"; it cannot reasonably be construed to refer to an open-ended and undefined conception of "the" UN, as UNRWA contends. *N.Y. State Nurses Ass'n Benefits Fund v. Nyack Hosp.*, 46 F.4th 97, 107-08 (2d Cir. 2022); *Noel Canning v. NLRB*, 705 F.3d 490, 500 (D.C. Cir. 2013); *cf. United States v. Requena*, 980 F.3d 30, 50 n. 17 (2d Cir. 2020) (indefinite article "a" refers to an unspecified or undetermined matter).

Other portions of the CPIUN's text confirm this. First, consider the CPIUN's preamble, which provides "valuable context for understanding the terms" of a treaty. *Mora v. New York*, 524 F.3d 183, 196 (2d Cir. 2008). It proclaims that the CPIUN's genesis lies in Article 105 of the UN Charter, which proclaims immunity for "*the Organization*" of the United Nations. CPIUN pmbl., 21 U.S.T. at 1420 (emphasis added).

The UN Charter itself contradicts UNRWA's claimed immunity. It "establish[ed] an international organization to be known as *the United Nations*." U.N. Charter pmbl. (emphasis added). This "international organization" is referred to throughout the Charter as "the United Nations," *id.* at art. 2, ¶ 6, art. 8, art. 75, or "the Organization." *Id.* at art. 2 ¶¶ 1, 6, art. 58, art. 59, art. 104, art. 105. Moreover, the Charter establishes six "principal organs of the United Nations[,]" *id.* at 7, ¶ 1

(emphasis added), but does not establish any subsidiary organs or other related entities at all.[4] Instead, it authorizes two principal organs—the General Assembly and the Security Council—to create subsidiary organs if they are deemed "necessary for the performance of [their respective] functions." *Id.* at arts. 22 29. The Charter thus allowed subsidiary organs to be created in the future, but neither named nor defined the authority of any. Construing the CPIUN's broad immunity to encompass as-yet uncreated organizations with as-yet undefined powers would be a remarkably aggressive and unprecedented construction of a treaty's plain text.

Indeed, the only mention of any entity-based immunity in the Charter appears in Article 105, which declares that "*The Organization* shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes." *Id.* at art. 105, ¶ 1. Thus, like CPIUN Article II, section 2, the plain language of the UN Charter does not mention immunity for subsidiary organs or other UN-related entities like UNRWA, and it uses the definitive, singular article "the." Construing "the" United Nations to mean as-yet uncreated entities other than the UN *qua* UN can be reasonable only if relevant context *clearly contradicts* its plain, singular meaning. *United States v. Alvarez-Machain*, 504 U.S.

---

[4] The UN Charter contains entire chapters elaborating the specific functions and authorities of the six principal organs. U.N. Charter Ch. IV (General Assembly), Ch. V-VIII (Security Council), Ch. IX-X (ECOSOC), Ch. XII-XIII (Trusteeship Council), Ch. XIV (International Court of Justice), Ch. XV (UN Secretariat). Because of this, the immunity of principal organs may warrant a different analysis. The case at bar, however, involves only the potential immunity of subsidiary organs or other UN entities; principal organs' immunity need not be resolved.

655, 664 (1992) (treaty text is primary but ambiguity may be resolved by context regarding its adoption and practice). But as elaborated *infra* Section II.B, the is *no clear evidence* in the CPIUN's ratification history that "the United Nations" included UN-related entities like UNRWA.

Second, consider the textual significance of Article IV, section 11, which the district court remarkably (and wrongly) construed to extend immunity to "subsidiary organs" of the UN. *Estate of Tov*, 2025 WL 2793701, at *3. This provision expressly gives limited immunity to "[r]epresentatives of Members to the *principal and subsidiary organs of the United Nations. . . .*" CPIUN art. IV, § 11, 21 U.S.T. at 1426. By its plain terms, the "representatives of Members"—i.e., representatives of sovereign state UN members—enjoy immunity when they are assigned to "the principal and subsidiary organs of the United Nations." But this has *nothing whatsoever* to do with the immunity of principal and subsidiary organs themselves.

Section 11's reference to "principal and subsidiary organs" affirmatively *contradicts* UNRWA's immunity claim. As this Court recognized in *Georges v. United Nations*, the negative implication canon, *expressio unius est exclusion alterius*, applies to the CPIUN. 834 F.3d 88, 93 (2d Cir. 2016). Thus, the CPIUN's express extension of immunity to the "representatives of Members" to the UN's "principal and subsidiary organs" negatively implies that principal and subsidiary organs *do not themselves* enjoy any immunity under Article II, section 2, which does

16

not mention them at all. *Id*. at 94. Section 11, in other words, shows that those who drafted and ratified the CPIUN understood the difference between the UN *qua* UN and its principal and subsidiary organs. When particular language is included in one section of a legal text but omitted in another, the Court should presume that the omission is intentional. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 314 (2020); *Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020).

The Court must give effect to the CPIUN's plain language. *Sumisoto Shoji Am., Inc.*, 457 U.S. at 180-83; *Maximov v. United States*, 373 U.S. 49, 54 (1963). The "interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellín*, 552 U.S. at 506; *accord Abbott*, 560 U.S. at 10. "[W]here the [treaty] text is clear, as it is here, [the courts] have no power to insert an amendment." *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134 (1989). Courts cannot "supply a *casus omissus* in a treaty, any more than in a law." *The Amiable Isabella*, 19 U.S. (6 Wheat) 1, 71 (1821). They must follow the rules of interpretation "as far as [they] go[], and [] stop where th[ey] stop[]—*whatever may be the imperfections or difficulties which it leaves behind*." *Id*. (emphasis added); *accord Chan*, 490 U.S. at 135. Any speculation about "what the drafters might have had in mind" cannot be given credit "where the text is clear[.]" *Chan*, 490 U.S. at 134. The court cannot "insert[] any clause, whether small or great, important or trivial" because doing so would be a

"usurpation of power, and not an exercise of judicial functions." *The Amiable Isabella*, 19 U.S. at 71.

As discussed in the next subsection, even if this Court concludes that "the United Nations" is somehow ambiguous, construing that phrase to include related entities like UNRWA would run contrary to the political branches' understanding that the CPIUN did not represent a sea-change in immunity.

**B.      The CPIUN's Ratification History Evinces No Evidence that the Executive or Senate Believed It Extended Immunity Beyond the UN Itself**

Construing the CPIUN to extend immunity beyond the UN *qua* UN would run directly counter to the United States's reasonable expectations when ratifying the CPIUN. The 1949 Resolution creating UNRWA, Resolution 302, neither refers to UNRWA as a "subsidiary organ" nor states that it is entitled to the UN's immunity. G.A. Res. 302 (IV) (Dec. 8, 1949). Instead, Paragraph 17 of Resolution 302 contains the following aspirational statement regarding UNRWA immunity:

> The General Assembly . . . *[c]alls upon* the Governments concerned to accord the United Nations Relief and Works Agency for Palestine Refugees in the Near East the *privileges, immunities*, exemptions and facilities *which have been granted* to the United Nations Relief for Palestinian Refugees, together with all other privileges, immunities, exemptions and facilities necessary for the fulfilment of its functions.

*Id*. at ¶ 17 (emphasis added). This "provision is precatory; it does not require" nations to grant immunity to UNRWA. *Immigr. & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421, 441 (1987) (convention language was precatory and not

18

binding); *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 131 (2d Cir. 2010) ("merely aspirational" declaarations are of "little utility" to resolving international law questions).

Resolution 302, moreover, was passed in 1949—three years *after* the CPIUN's enactment. By "call[ing] upon" Members to grant UNRWA immunity, the resolution shows that the General Assembly understood that UNRWA *did not already have immunity* under the CPIUN. Moreover, its aspirational language references immunity that already "*ha[d] been granted*" to UNRWA's predecessor organization, the United Nations Relief for Palestine Refugees ("UNRPR"). G.A. Res. 302 (IV*), supra*, ¶ 1. Yet there is no evidence that UNRPR enjoyed any immunity at all. Indeed, the Resolution creating the UNRPR contains *no mention* of immunity, G.A. Res. 212 (III) (Nov. 19, 1948), and there is zero evidence that the United States acknowledged any immunity of UNRPR.

This is not surprising, since customary international law recognized no immunity for international organizations. As a 2009 treatise on the subject explains, "[i]t is difficult to argue that *all* international organizations are to enjoy privileges and immunities by virtue of customary international law. The customary foundation of immunities seems to be accepted for the *UN only. . . .* What is clear in any event, is that states are under no duty to grant such . . . immunities to particular organizations if they have not agreed to do so explicitly, or may not be deemed to

19

have agreed to do so implicitly." PHILIPPE SANDS & PIERRE KLEIN, BOWETT'S LAW OF INT'L ORGS. 493 (6th ed. 2009). So, when the CPIUN was passed by the General Assembly (1946) and even decades later, when it was ratified by the Senate (1970), customary international law did not consider any entity other than the UN *qua* UN to be entitled to immunity.

UNRWA's Annual Reports confirm that it knew the CPIUN gave it no immunity. UNRWA's claim of immunity faced immediate opposition from Member States. Ann. Rep. of the Dir. of UNRWA 1951-52, U.N. Doc. A/2171, Supp. No. 13, at 43 (1952); Ann. Rep. of the Dir. of UNRWA 1953-54, U.N. Doc. A/2717, Supp. No. 17, at 30, ¶ 1 (1954). By 1956, UNRWA's annual reportacknowledged, "The legal status of [UNRWA] and its staff is still not fully recognized in some host countries, and the privileges and immunities necessary and custom for an organ of the United Nations are *often disputed*." Ann. Rep. of the Dir. of UNRWA 1955-56, U.N. Doc. A/3212, Annex G, ¶ 2 (1956) (emphasis added). UNRWA's 1957 Report likewise admitted that some nations did "not recognize that the agency is a subsidiary organ of the United Nations," and cited "a Gaza court . . . decision to the effect that the Agency [UNRWA] was not an organ of the United Nations." Ann. Rep. of the Dir. of UNRWA 1956-67, U.N. Doc. A/3686, Supp. No. 14, at Annex H, ¶ 14 n.34 (1957). If the *plain language and meaning* of CPIUN extended immunity to

20

UNRWA, Member States would not have mounted such early, vigorous objections to UNRWA's claimed immunity.

The Senate's ratification of the CPIUN also confirm that it did not extend immunity to entities like UNRWA. For example, a 1946 State Department memorandum declared that the CPIUN "does not contain measures of a drastic character . . . ."" Memorandum, Acting Assistant Chief of the Div. of Int'l Org. Affairs (Halderman) (Apr. 9, 1946), https://tinyurl.com/5x3cvv38. And the State Department's 1947 letter transmitting the CPIUN to the Senate stated, "Many of the privileges and immunities [in the CPIUN] . . . have already been conferred upon the United Nations by virtue of the provisions of the International Organizations Immunities Act," and explaining that the CPIUN "goes beyond" the International Organizations Immunities Act ("IOIA")[5] in only three ways not relevant here. Letter from George C. Marshall, Sec'y, U.S. Dep't of State, to Joseph W. Martin, Jr., Speaker, U.S. House (May 12, 1947), https://tinyurl.com/mr2ztb6a. These early statements confirm that the Executive did not believe that the CPIUN represented a sea-change in immunity.

_____

[5] The IOIA grants a functional (not absolute) immunity to international organizations that have been specifically designated by presidential Executive Order as entitled to receive such immunity. 28 U.S.C. § 288; *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 207-10 (2019) (the functional immunity of the Foreign Sovereign Immunities Act ("FSIA") is the reference standard for IOIA immunity). UNRWA has not received a presidential designation for IOIA immunity, and the district court expressly did not address IOIA immunity. *Estate of Tov*, 2025 WL 2793701, at *9.

21

Similarly, when the CPIUN was placed before the Senate for ratification by Senator Mansfield, he informed his colleagues: "While the convention *largely represents the existing practice with regard to privileges and immunities*, it does enlarge upon them in *three relatively minor respects*," none of which are relevant to UNRWA's claimed immunity here.[6] 116 Cong. Rec. 7878 (1970) (emphasis added). The "existing practice" with regard to privileges and immunities to which Mansfield referred did not include *any immunity* for entities like UNWRA, under customary international law or any other source of law.

Statements made by Senate and Executive officials during the Senate Foreign Relations Committee's consideration of the CPIUN echo Senator Mansfield's, confirming that neither political branch believed the CPIUN extended immunity beyond the UN *qua* UN. *See* S. Comm. on Foreign Rels., Convention on Privileges & Immunities of the U.N., Exec. Rep. 91-17, at 1-2 (Mar. 17, 1970) (CPIUN alters immunity only in "minor ways" and "do[es] not change the present situation since the [IOIA] already provides for the same . . . immunities"); *id.* at 8 (statement of Charles W. Yost, U.S. Permanent Rep. to UN, describing same three changes

---

[6] The three changes are the same as those identified in the 1947 State Department letter transmitting the CPIUN to the Senate, as follows: First, "Under present law, only resident representatives to the United Nations enjoy full diplomatic immunities . . . Under the convention, [nonresident representatives] would now also enjoy full diplomatic privileges and immunities . . . ." 116 Cong. Rec. 7878 (1970) Second, "[U]nder the convention, the Secretary General, Under Secretaries and Assistant Secretaries of the United Nations . . . would be granted full diplomatic privileges and immunities." *Id.* Third, "Experts on United Nations missions are the last group whose position would be improved by the convention." *Id.* None of these three changes is relevant here.

identified by Sen. Mansfield); *id*. at 11 (statement of John R. Stevenson, Legal Adviser, Dep't of State, "With respect to the United Nations itself, there is no significant change" in immunity). Indeed, there was only one question asked about extending immunity *beyond* the UN *qua* in the Committee, when Chairman Fulbright asked the State Department Legal Adviser, "Does this convention apply only to *the United Nations*, or does it also cover the OAS, regional organizations or specialized United Nations agencies?," to which Stevenson replied, "There is a separate convention on specialized agencies which is not before the Senate."[7] *Id*. at 37 (emphasis added). To this day, the U.S. has not acceded to that separate convention.

As this history shows, neither political branch thought the CPIUN extended immunity beyond the UN itself (which had already occurred via President Truman's 1946 IOIA designation of "the United Nations") because it *did not alter the UN's immunity in any meaningful way*. Indeed, there is not a single document from the Executive or Congress that even remotely suggested that any entity other than the UN *qua* UN was entitled to immunity. Given this, UNRWA's immunity assertion has no basis in either the CPIUN's text or its ratification history.

---

[7] Convention on Privileges & Immunities of the Specialized Agencies, Aug. 16, 1949, 33 U.N.T.S. 261.

C.     The District Court Committed Egregious Legal Error In Its Construction of the CPIUN

UNWRA relies heavily on nonbinding decisions of lower courts. Yet none of these decisions—including that of the district court below—ever addressed the textual and contextual arguments presented here; they are issues of first impression. Moreover, as elaborated below, the cases predating the district court's decision are distinguishable in material respects.

As discussed *supra* Section II.A, the district court wrongly believed that CPIUN Article IV, Section 11 extended immunity to UNRWA, even though that provision has *nothing to do* with the immunity of subsidiary organs. *Estate of Tov*, 2025 WL 2793701, at *3. Because of this fundamental error, the court focused its attention on whether UNRWA was a "subsidiary organ." *Id*. at *4-6. Once it concluded that it was a subsidiary organ, the court cited a single decision, *Sadikoglu v. United Nations Development Programme*, No. 11 Civ. 0294, 2011 WL 4953994 (S.D.N.Y. Oct. 14, 2011), to conclude that UNRWA enjoyed absolute immunity via the CPIUN. *Estate of Tov*, 2025 WL 2793701, at *6.

But the *Sadikoglu* plaintiff *did not even challenge* the CPIUN's applicability to the UN Development Programme ("UNDP"). *Sadikoglu*, 2011 WL 4953994, at *2. Instead, the *Sadikoglu* court ordered briefing on the issue *sua sponte* and in response, plaintiff argued only that the CPIUN conferred functional (not absolute) immunity, and that immunity should not attach because the UNDP's activity was

commercial in nature. Pl.'s Mem. Regarding Lack of Immunity at 5-15, *Sadikoglu v. U.N. Dev. Programme*, No. 11 Civ. 0294 (S.D.N.Y. Oct. 14, 2011), ECF No. 15. Since plaintiff did not argue otherwise, the *Sadikoglu* court unsurprisingly held that the "UNDP—as a subsidiary program of the UN . . . has not waived its immunity, the CPIUN mandates dismissal of Plaintiff's claims[.]" *Sadikoglu*, 2011 WL 4953994, at \*3 (cleaned up).

The other cases UNRWA relies upon suffer from the same defect as *Sadikoglu*: the plaintiffs there *conceded* that CPIUN immunity applied and argued only that immunity should not attach because it had been waived or other exceptions applied. *See, e.g.*, *Bisson v. U.N.*, No. 06 Civ. 6352, 2008 WL 375094, at \*3 (S.D.N.Y. Feb. 11, 2008) (*pro se* plaintiff "argued that, despite the broad grant of immunity" under CPIUN, immunity had been waived); *Nicol v. U.N. Missions in Liberia*, No. 09-1800, 2009 WL 2370179, at \*1 (E.D. Pa. July 30, 2009) (plaintiff did not contest immunity but argued "Defendants waived their immunity"); *Lempert v. Rice*, 956 F. Supp. 2d 17, 24 (D.D.C. 2013) (*pro se* plaintiff argued UNDP was not entitled to CPIUN immunity due to due process objections); Pl.'s Mem. to Respond at 21-23, *Lempert v. Rice*, 956 F. Supp. 2d 17 (D.D.C. 2013) (No. 12-01518), ECF No. 29.

Likewise, in *Georges v. United Nations*, the district court held that the UN Stabilization Mission in Haiti ("MINUSTAH") was entitled to CPIUN immunity via a one-sentence, conclusory analysis that cited only *Sadikoglu:* "MINUSTAH, as a

25

subsidiary body of the UN, is also entitled to immunity from suit." 84 F. Supp. 3d 246, 249 (S.D.N.Y. 2015). But as with *Sadikoglu*, the *Georges* plaintiffs *did not challenge* CPIUN immunity; they agreed that "Defendants enjoy broad immunity under the UN Charter and the [CPIUN]," arguing instead that MINUSTAH's immunity was conditioned "on fulfilment of [its] obligations, and under a treaty that [it] ha[s] breached." Pl.'s Mem. of Law in Opp'n at 1-3, *Georges v. U.N.*, 84 F. Supp. 3d 246 (S.D.N.Y. 2015) (No. 1:13-cv-07146), ECF No. 35; *see also Georges*, 84 F. Supp. 3d at 249. The district court rejected this "nonfulfillment of obligations" argument.. *Georges*, 84 F. Supp. 3d at 249. The Second Circuit affirmed, concluding that under *expressio unius*, CPIUN immunity could be disregarded only upon express waiver, and was thus not conditioned on fulfilment of other obligations. *Georges*, 834 F.3d at 93-94, 97; *see also Laventure v. United Nations*, 279 F. Supp. 3d 394, 397 (E.D.N.Y. 2017) (plaintiffs did not contest MINUSTAH's immunity but argued it had "repeatedly and expressly" waived it).

UNRWA also cites an early New York state court decision, *Shamsee v. Shamsee*, 428 N.Y.S.2d 33 (N.Y. App. Div. 1980), which is readily distinguishable. There, the court held that the UN's Joint Staff Pension Fund was immune from a sequestration order awarding support to the wife of a former UN employee. *Id.* at 34. Notably, it was *undisputed* in *Shamsee* that the Fund's assets were UN property, with the court noting that although the Pension's assets were "held separately from

other United Nations property, [they] are the property of *that international organization*," i.e., the UN *qua* UN. *Id.* at 36. The Pension's assets were thus immune under CPIUN Article II, section 2, which immunizes from legal process: "The United Nations, its property and assets, wherever located and *by whomsoever held . . . .*" CPIUN art. II, § 2 (emphasis added). The case at bar, by contrast, does not implicate seizure of any UN assets.[8]

Some courts have mistakenly construed *Shamsee* to mean that UN subdivisions enjoy immunity. For example, in *Boimah v. United Nations General Assembly*, 664 F. Supp. 69 (E.D.N.Y. 1987), the court dismissed a *pro se* suit against the UN General Assembly—a principal organ—relying on *Shamsee*. *Id.* at 70-71. Like the other cases, the plaintiff did not contest that the CPIUN applied and the court's analysis accordingly spanned one sentence: "There can be little question that the General Assembly, as one of the six *principal organs* of the United Nations, enjoys the same immunities" as the UN *qua* UN. *Id.* at 71 (emphasis added) (citation omitted). The same non-analysis occurred in *Hunter v. United Nations*, 800 N.Y.S.2d 347 (N.Y. Sup. Ct. 2004) (Table), in which the plaintiff did not contest immunity, the parties never briefed it, and the court thus concluded that the UN Children's Fund

---

[8] If Plaintiffs prevail here, unlike *Shamsee*, the court will not need to seize any UN property. UNRWA receives only 5 percent of its annual budget from the UN; the remaining 95 percent comes from voluntary contributions from governments. Rhoda Margesson & Jim Zanotti, *supra* at 1.

27

("UNICEF") was immune by reflexively relying on *Shamsee* and *Boima,* It copied verbatim *Boimah*'s one sentence analysis, substituting only the phrase "the General Assembly as one of the six principal organs of the United Nations" with "UNICEF, as a United Nations organization." *Id.*

All of these prior cases are readily distinguishable because the plaintiffs did not contest immunity. Indeed, in only one case, *Sadikoglu*, did the court even have the benefit of briefing on the reach of CPIUN immunity. But even there, the plaintiff did not contest that CPIUN applied, arguing instead that a commercial activity exception should be recognized. Pl.'s Mem. Regarding Lack of Immunity at 5-15, *Sadikoglu v. U.N. Dev. Programme*, No. 11 Civ. 0294 (S.D.N.Y. Oct. 14, 2011), ECF No. 15. Indeed, this case is the first case in which plaintiffs have directly challenged whether the CPIUN confers immunity beyond the UN *qua* UN. *Estate of Tov*, 2025 WL 2793701, at *2. The district court below evaded this issue by misconstruing CPIUN Article IV, section 11, and then relying on *Sadikoglu* for the proposition that the CPIUN grants immunity to all UN "subsidiary organs" without bothering to provide a definition thereof. *Id.* at *3, 6.

*Amici* thus ask this Court to finally address the plain meaning of the UN Charter, CPIUN, and Resolution 302 (creating UNRWA), using well established canons of construction as its guide. Even if the court finds these texts ambiguous, however, the CPIUN's ratification history shows that both political branches

28

believed the CPIUN would not alter *pre-existing immunity* law except in three narrow circumstances (inapplicable here). That pre-existing immunity law, however, did not extend immunity beyond the UN *qua* UN.

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision of the District Court.

Date:  January 29, 2026

Respectfully submitted,

*/s/ Jason Torchinsky*
Jason Torchinsky
Elizabeth Price Foley
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
2300 N St. NW, Suite 643
Washington, D.C. 20037
Phone: (202) 737-8808
Email: jtorchinsky@holtzmanvogel.com
        efoley@holtzmanvogel.com

Susan Greene
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
5360 Genesee St., Suite 203
Buffalo, NY 14026
Phone: (716) 647-6103
Email: sgreene@holtzmanvogel.com

*Counsel for Amici Curiae Former National
Security and Foreign Policy Officials*

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Federal Rules of Appellate Procedure 29, 32(a)(5), and 32(a)(7), and Local Rule 32.1, the foregoing is proportionately spaced, has a typeface of 14 point Times New Roman, and contains 6,905 words, excluding those sections identified in Federal Rule of Appellate Procedure 32(f).

*/s/ Jason Torchinsky*
Jason Torchinsky

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, the foregoing was served on all parties or their counsel through the CM/ECF system.

*/s/ Jason Torchinsky*
Jason Torchinsky

30